# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Daniel Mosso Ramirez, and Christopher Njingu,

    Petitioner-plaintiffs

v.

Robert Culley, et al.,

    Respondent-defendants

Case No.: 2:20-cv-00609-JAD-VCF

**Order Denying Motion for Temporary Restraining Order**

[ECF No. 2]

Daniel Mosso Ramirez and Christopher Njingu filed this 28 U.S.C. § 2241 petition to challenge their detention by Immigration and Customs Enforcement (ICE) at the Henderson Detention Center (HDC) and seek a temporary restraining order for their immediate release. They argue that their continued civil detention pending adjudication of their immigration matters, in light of the global pandemic caused by the COVID-19 virus, violates their due-process rights. I deny the motion because Njingu has recently been released, making his request for relief moot, and Ramirez has demonstrated only a speculative risk of harm.

## Background

Njingu and Ramirez jointly filed this federal habeas petition on March 31, 2020, to challenge their continued ICE detention at the HDC.[1] Njingu's release[2] moots his request for relief, so I deny the petition and motion as to Njingu based on mootness, and I evaluate the merits of the motion only as to Ramirez.

---

[1] ECF No. 1.

[2] ECF No. 9 (stipulation in which the parties reported that "Njingu was released on parole from ICE detention on April 2, 2020.").

Ramirez alleges that he is a 45-year-old citizen of Mexico, who suffers from pre-diabetes, hypertension, and high cholesterol and takes medication to manage these health conditions.[3] He has been detained by ICE at the HDC since February of this year pending removal proceedings.[4] His detention is based on 8 U.S.C. § 1226(c)(1)(B), which requires the detention of aliens in removal proceedings based on prior drug convictions.[5]

Ramirez contends that his health conditions make him particularly vulnerable to severe illness or death if infected by the COVID-19 virus. He avers generally that the "conditions of immigration detention facilities pose a heightened public health risk for the spread of COVID-19," elaborating that:

> Individuals in immigration detention are not able to practice the proper social distancing and hygiene required to prevent the transmission of this disease. People live in close quarters and are unable to maintain the recommended distance of six feet from others. People share and touch objects used by others. Toilets, sinks, and showers are shared, without disinfection between each use. Food preparation and service is communal with little opportunity for surface disinfection. Staff arrive and leave on a shift basis, with limited ability to adequately screen staff for new, asymptomatic infection.[6]

He theorizes that ICE is showing a deliberate indifference to his safety in violation of his Fifth Amendment right to reasonable safety by continuing to detain him despite his health vulnerabilities. Ramirez seeks a writ of habeas corpus, or in the alternative, a temporary restraining order for his "immediate release" from detention.[7]

---

[3] ECF No. 1 at ¶ 7.
[4] ECF No. 1
[5] ECF No. 14 at 3.
[6] ECF No. 1 at 9.
[7] ECF No. 1 at 4, 19; ECF No. 2.

2

# Discussion[8]

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[9] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[10] The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."[11] Because I find that Ramirez's motion falters at the first two prongs of the *Winter* test, I do not reach the third and fourth prongs.

**A.  Ramirez has not shown a likelihood of success on the merits of his claim.**

"When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety

---

[8] I note that a habeas petition may not be the proper vehicle for Ramirez to challenge his conditions of his confinement because "the writ of habeas corpus is limited to attacks upon the legality or duration of confinement." *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979); 28 U.S.C. § 2254(a). But other courts that have recently considered substantially similar claims have done so within the habeas context. *See, e.g., Castillo v. Barr*, 2020 WL 1502864 (C.D. Cal. March 31, 2020); *Dawson v. Asher*, 2020 WL 1304557 (W.D. Wash. March 19, 2020). Respondents raise this concern and also argue that Ramirez lacks Article III standing. Because I need not address these issues to resolve this motion for temporary restraining order, I leave them for future consideration.

[9] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

[10] *Winter*, 555 U.S. at 20.

[11] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

and general well-being."[12]  That duty includes providing custodial detainees with "food, clothing, shelter, medical care, and reasonable safety."[13]  Conditions that pose an unreasonable risk of future harm violate the Eighth Amendment's prohibition against cruel and unusual punishment, even if that harm has not yet come to pass.[14]  And because Ramirez is a civil detainee, not a criminal one,[15] the Fifth Amendment's Due Process Clause also guarantees that he will not be subjected to conditions that amount to punishment.[16]

Ramirez points out that the Supreme Court has explicitly recognized that the risk of contracting a communicable disease may constitute such an "unsafe, life-threatening condition" that it threatens "reasonable safety."[17]  And the High Court noted in *Helling v. McKinney* that detainees "need not await a tragic event" before they are entitled to a remedy for unsafe conditions.[18]  But the presence of such an unsafe condition at HDC is speculative at this point. While Ramirez alleges that individuals housed at HDC have already been exposed to COVID-19,[19] the declarations that respondents provide with their opposition and answer aver that no

---

[12] *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).

[13] *Id.* at 200.

[14] *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney*, 489 U.S. at 200) (The Eighth Amendment requires that "inmates be furnished with the basic human needs, one of which is 'reasonable safety.'").

[15] *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

[16] *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *King v. Cty. of L.A.*, 885 F.3d 548, 556–557 (9th Cir. 2018).

[17] *Helling*, 509 U.S. 25 at 36.

[18] *See id.* at 33–35 (citing *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) and *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980) (holding that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety from exposed electrical wiring, deficient firefighting measures, and the mingling of inmates with serious contagious diseases with other prison inmates)); s*ee also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (mingling of inmates with infectious diseases with others).

[19] ECF No. 2 at 8.

HDC inmate, detainee, or employee has tested positive for COVID-19.[20]  Respondents also set forth with particularity the detailed, preventative protocol that they have instituted to protect detainees:

    a. Employee Self-Check Stations – Before each shift, all HDC employees are required to check their temperature and answer a series of questions related to their health, any prolonged contact with others who are symptomatic of COVID-19, and whether the employee has traveled outside of the Las Vegas Valley within the last 14 days of their self-check. Depending on the responses to these questions and the employee's temperature, the employee may not be permitted to enter the work area and is restricted from physically coming to work.

    b. Staff Personal Protective Equipment ("PPE") – all HDC staff required to interact with inmates/detainees have been equipped with proper PPE, including glasses, N95 masks, gowns, and gloves.

    c. Inmate/Detainee Pre-screening process – When new inmates/detainees arrive at the HDC, a nurse will conduct a pre-screening process at the door of the facility before the new arrivals are permitted to enter. This pre-screening process includes a temperature check, asking the new arrival a series of questions related to COVID-19, and a determination as to whether the new arrival should be quarantined. Asymptomatic arrivals may be quarantined if they have been in contact with others exhibiting symptoms consistent with COVID-19. Once the pre-screening process is completed, new arrivals undergo the HDC's normal medical screening and booking process.

    d. Cleaning and Sanitation – HDC has implemented daily, increased cleaning of inmate/detainee housing and dayroom areas. HDC has hired a third-party bio-hazard cleaning company to clean housing areas that have been utilized by symptomatic quarantined residents.

    e. Visitation and Programming – The HDC is closed to all visitors. All in-person visits, with the exception of attorney visits, have been cancelled. In addition, all programming conducted by volunteers or third parties has been cancelled in order to decrease the number of people entering the HDC. Inmates and detainees are still permitted to use telephones and to write letters to communicate with family or others outside the facility.

    f. Education – The City of Henderson has provided its employees with various educational materials and resources regarding COVID-19. In turn,

---

[20] ECF No. 14 at 3; ECF No. 12 at 4.

  HDC employees have been educating inmates and detainees about the importance of social distancing in the dayroom as well as proper hygiene to help curb the spread of COVID-19.

 g. Dayroom time and Meal Service – The HDC has implemented a "split tier" dayroom and meal service schedule to help with social distancing. This means that the entire population of a given housing unit will not be able to use the dayroom at the same time. Instead, the inmates and detainees will be split into two groups resulting in approximately 50% fewer inmates in the dayroom and at meal service at a time. In addition to the split tier schedule, the HDC has instituted the following social distancing parameters:

  i. There must be at least one empty phone in between inmates/detainees using the phone bank.

  ii. Inmates/detainees are not permitted to sit next to one another at the tables in the dayroom and must be an arms-length away from other inmates/detainees when sitting in chairs that can be moved around the dayroom.

  iii. Inmates/detainees are expected to maintain six feet of separation between themselves, HDC staff, and medical personnel.

 h. Quarantine – HDC, upon recommendation from medical personnel, quarantines both symptomatic and asymptomatic inmates/detainees for a minimum of 14 days. Quarantined inmates/detainees are seen twice a day by medical personnel and treated and/or monitored depending on symptoms, if any.[21]

With no evidence that HDC detainees are currently being subject to constitutionally unsafe conditions, Ramirez has not established a likelihood of succeeding on the merits of his claim.

---

[21] ECF No. 14 at 3–5; ECF No. 12 (Robinson Decl.) at 2–4.

**B.     Ramirez has not established that he will suffer irreparable harm absent immediate release.**

Ramirez also has not shown that "irreparable injury is *likely* in the absence of an injunction."[22] A mere possibility of harm is insufficient to warrant the extraordinary relief of a temporary restraining order.[23] Respondents have demonstrated that there is currently no evidence of a COVID-19 outbreak at the HDC. They have also shown with particularity that detailed precautionary measures have been put in place to help protect the health and safety of HDC detainees. So Ramirez has not established that irreparable injury will result absent his immediate release. Even if Ramirez had shown that unsafe conditions at HDC have risen to the level of a constitutional violation, he has not demonstrated that the proper remedy for that violation would be his immediate release. Ramirez tacitly acknowledges this when he states in his motion that "the only available remedy is to reduce levels of detention *unless and until conditions can be brought in line with constitutional standards*." [24]

---

[22] *Winter*, 555 U.S. at 22 (emphasis in the original).

[23] *See id.* The COVID-19 global pandemic is undisputedly a grave and dynamic situation, and the safety of the public and individuals should be a priority of all sectors of federal, state, and local government. My ruling here in no way downplays this reality, but the narrow record in this case does not support injunctive relief. I also recognize that the Central District of California in *Castillo v. Barr*, 2020 WL 1502864, ordered the release of immigration detainees from a facility with no confirmed COVID-19 cases. However, the record in *Castillo* showed that the Department of Homeland Security's Office of the Inspector General had repeatedly, and as recently as 2018, found that significant and various health and safety risks existed at that particular immigration detention center; personnel were not using personal protective equipment; and no measures had been instituted to prevent a COVID-19 outbreak. *Castillo*, 2020 WL 1502864, at *1–2. So *Castillo* is materially distinguishable.

[24] ECF No. 2 at 17 (emphasis added).

**Conclusion**

IT IS THEREFORE ORDERED that the motion for temporary restraining order **[ECF No. 2] is DENIED**.

IT IS FURTHER ORDERED that **the petition is DENIED as moot as to petitioner-plaintiff Christopher Njingu.**

IT IS FURTHER ORDERED that Ramirez has until May 11, 2020, to file his reply in support of the petition, if any.

Dated: April 9, 2020

_____
U.S. District Judge Jennifer A. Dorsey